**IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT**
**IN AND FOR ORANGE COUNTY, FLORIDA**
**CIVIL DIVISION**

**NELSON RODRIGUEZ,**

Plaintiff,

v. Case No.:

**BRODER BROS., CO. D/B/A ALPHA BRODER,**

Defendant.
_______________________________________/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, NELSON RODRIGUEZ, by and through his undersigned attorney, and hereby sues Defendant, BRODER BROS. CO D/B/A ALPHA BRODER, and states the following:

## PRELIMINARY STATEMENT

1. This is an action seeking declaratory, injunctive, and equitable relief, as well as compensatory and punitive damages, to redress Defendant's violations of 42 U.S.C. § 1981 ("Section 1981"), as well as violations of Florida common law, including defamation, malicious prosecution, negligent supervision and retention, and intentional infliction of emotional distress. Defendant is liable for the acts and omissions described herein, which deprived Plaintiff of his rights under federal and state law and caused substantial harm.

2. Specifically, Defendant violated 42 U.S.C. § 1981 by discriminating against Plaintiff Nelson Rodriguez through persistent racial harassment, disparate and discriminatory discipline, and retaliation after Plaintiff complained about the discriminatory treatment and workplace safety concerns.

3. Additionally, Defendant defamed Plaintiff by falsely accusing him of serious criminal conduct, including shooting at the workplace and possession of a firearm, and communicated these false allegations to law enforcement and other third parties. These defamatory statements were made with full

knowledge that Plaintiff had not engaged in any such conduct, and were intended to damage Plaintiff's reputation, interfere with his employment prospects, and further retaliate against him for his prior complaints of discrimination and workplace misconduct.

4. Defendant further engaged in malicious prosecution by instigating criminal proceedings against Plaintiff without probable cause and with malice, resulting in Plaintiff's arrest, a traumatic police encounter, and significant reputational and financial harm. The criminal charges were ultimately dismissed in Plaintiff's favor.

5. Defendant negligently supervised and retained employees known to have engaged in violent, threatening, harassing, and discriminatory conduct, despite repeated complaints and clear evidence of risk to Plaintiff and others. Defendant failed to take reasonable steps to prevent or address this misconduct, thereby allowing the unlawful conduct to continue and escalate.

6. Defendant's conduct was extreme and outrageous, and was intended to, or was done with reckless disregard for the probability of causing, severe emotional distress to Plaintiff. As a result, Plaintiff suffered and continues to suffer significant emotional distress, mental anguish, and other non-economic damages.

7. Defendant's unlawful conduct was knowing, malicious, willful, and wanton, and/or showed a reckless disregard for Plaintiff's protected rights, which has caused and continues to cause Plaintiff to suffer substantial economic and non-economic damages.

## PARTIES

8. Plaintiff, Nelson Rodriguez, is a resident of Orange County, Florida, and was employed by Defendant Alpha Broder as a material handler from September 10, 2020, to October 27, 2023.

9. Defendant Alpha Broder is a Delaware corporation doing business in Florida, with its principal place of business at 6 Neshaminy Interplex, 6th Floor, Trevose, Pennsylvania 19053.

## JURISDICTION AND VENUE

10. This is a cause of action for damages in excess of Fifty Thousand ($50,000.00) dollars, exclusive of costs, interest, and attorney's fees.

11. At all times material hereto, Plaintiff was a resident of Orange County, Florida.

12. At all times material hereto, Defendant employed Plaintiff in Orange County, Florida.

13. Venue lies with this Court as to Plaintiff's claims as the events giving rise to the claims occurred in Orange County, Florida.

## CONDITIONS PRECEDENT

14. Plaintiff has exhausted his administrative remedies and satisfied all conditions precedent to bringing this action.

## FACTUAL ALLEGATIONS

### Employment and Job Duties

15. Plaintiff began employment with Alpha Broder on or about September 10, 2020, as a material handler, earning $18.37 per hour.

16. Plaintiff worked overtime and was provided an employee contract.

17. Plaintiff's employment ended on or about October 27, 2023.

### Hostile Work Environment and Discriminatory Treatment

18. From 2021 through 2023, Plaintiff was subjected to repeated threats and harassment by Plaintiff's coworker, including death threats and songs about death directed at Plaintiff and others.

19. Plaintiff requested to be separated from Plaintiff's coworker and reported these threats to supervisors, but no meaningful action was taken.

20. Other employees who were involved in altercations were separated and disciplined, but when Plaintiff complained about Plaintiff's coworker, Plaintiff was instead disciplined and counseled

for unrelated minor infractions, such as listening to music with profanity and smoking, while similarly situated employees were not disciplined for the same conduct.

21. Plaintiff was disciplined for tardiness and given points, while other employees were not disciplined or given points for similar behavior.

22. Plaintiff was denied floating holiday and vacation time unless pre-reported 48 hours in advance, a requirement not imposed on other employees. Approval for leave was subject to the manager and HR.

23. A lead supervisor made racist comments in the workplace. Multiple employees, including Plaintiff, complained verbally and in writing to HR, but no action was taken.

24. Plaintiff and other employees witnessed a domestic violence incident in the warehouse involving the manager, his wife, and another employee. Management and employees covered up the incident and failed to report it to HR, corporate, or authorities.

25. Plaintiff's complaints regarding workplace safety, threats, and the domestic violence incident were disregarded and ignored by management.

26. As a result of Defendant's persistent retaliation, harassment, discriminatory discipline, and repeated failure to address Plaintiff's complaints of workplace misconduct, Plaintiff's working conditions because so intolerable and hostile that he was left with no reasonable alternative but to end his employment.

**Retaliation and Malicious Prosecution**

27. After Plaintiff complained about Plaintiff's coworker and the domestic violence incident, Plaintiff's manager retaliated by making false criminal accusations against Plaintiff, alleging that Plaintiff shot up the warehouse.

28. On or about November 17, 2023, police arrived at Plaintiff's home, broke down the door, and searched the premises based on accusations from Alpha Broder management. Plaintiff and his mother were subjected to a traumatic police encounter.

29. Plaintiff was accused of criminal mischief and possession of a firearm. The charges were dismissed on August 13, 2025.

30. Defendant withheld exculpatory information from authorities and courts, resulting in reputational harm and financial loss to Plaintiff, including difficulty securing new employment due to the criminal matter appearing on Plaintiff's record.

31. As a direct result, Plaintiff has suffered significant damage, including loss of potential employment opportunities and emotional distress.

**COUNT I**

**WHISTLEBLOWER RETALIATION (Fla. Stat. § 448.102 et seq.)**

32. Plaintiff realleges and incorporates paragraphs 1–31 as if fully set forth herein.

33. Plaintiff engaged in protected activity by, among other things, reporting workplace safety concerns, threats, and criminal conduct to management and HR.

34. Specifically, Plaintiff engaged in protected activity within the meaning of Fla. Stat. § 448.102 by objecting to and reporting conduct by Defendant and its supervisors that violated, or that Plaintiff reasonably believed violated, federal and state laws, rules, and regulations, including but not limited to: a. The Occupational Safety and Health Act, 29 U.S.C. § 654(a)(1) which requires employers to provide a workplace free from recognized hazards likely to cause death or serious harm; and b. The Florida Civil Rights Act, Ch. 760, Fla. Stat., and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., prohibiting discrimination, harassment, and retaliation in employment.

35. Plaintiff objected to and/or refused to participate in activities and practices of the employer that violated state law.

36. Defendant retaliated against Plaintiff by subjecting him to disparate discipline, fabricating criminal accusations, and causing Plaintiff's termination.

37. Defendant terminated Plaintiff because he engaged in protected activity.

38. As a direct and proximate result, Plaintiff suffered damages including lost wages, emotional distress, and reputational harm.

## COUNT II

## DISCRIMINATION AND HARASSMENT (42 U.S.C. § 1981)

39. Plaintiff realleges and incorporates paragraphs 1–26 as if fully set forth herein.

40. Plaintiff is a member of a protected class because he is Hispanic of Dominican Republic origin.

41. Defendant had actual knowledge that Plaintiff was a member of a protected class.

42. Defendant discriminated against Plaintiff by, among other things, subjecting Plaintiff to harsher treatment and less due process in disciplinary matters compared to others, and ultimately terminating Plaintiff because of his race.

43. Plaintiff was subjected to harassment and disparate treatment based on race, including racist comments, denial of benefits, and unequal discipline.

44. Defendant failed to take corrective action despite Plaintiff's complaints.

45. Other equally or less qualified employees who were not members of the protected class were not subject to the same treatment.

46. Defendant discriminated against Plaintiff on the basis of his race, color, and ethnicity and discriminated against him with respect to the terms, conditions, and privileges of employment because of his race, color, and ethnicity, all in violation of 42 U.S.C. § 1981, for which Defendant is liable.

47. As a result of Defendant's conduct set forth above, Plaintiff is entitled to compensation for any and all lost wages and benefits and reasonable attorney's fees and costs.

48. Defendant acted intentionally, maliciously, willfully, wantonly and recklessly and in conscious disregard of Plaintiff's right in discriminating against him on the basis of his race, color, and ethnicity and for such conduct, Defendant is liable.

**COUNT III**

**DEFAMATION**

49. Plaintiff realleges and incorporates paragraphs 1–31 as if fully set forth herein.

50. Defendant made false and defamatory statements to law enforcement and third parties, accusing Plaintiff of criminal conduct.

51. Defendant knew or should have known the statements were false and acted with malice.

52. Plaintiff suffered reputational harm, emotional distress, and financial loss.

53. Defendant knowingly published and communicated false statements to law enforcement, other employees, and third parties, accusing Plaintiff of serious criminal conduct, including shooting at the workplace and possessing a firearm, despite having no factual basis for these allegations.

54. These defamatory statements were made by the manager and others in November of 2023.

55. These defamatory statements were made with full knowledge that they were false and that Defendant had exculpatory video evidence showing that Plaintiff did not commit these crimes. Despite this, Defendant knowingly made these false allegations, intending to damage Plaintiff's reputation and further retaliate against him for his prior complaints and protected activity.

56. Defendant knew or should have known that the defamatory statements were false.

57. The statement is defamatory because it misconstrues Plaintiff as a violent criminal who lacked integrity and professionalism.

58. Defendant published or allowed the defamatory statements to be published.

59. These defamatory statements were made by Defendant with actual and constitutional malice as they were known by Defendant to be false and misleading.

60. These false statements were made with actual malice and reckless disregard for the truth, and were intended to injure Plaintiff's reputation, subject him to criminal investigation and prosecution, and interfere with his ability to secure future employment.

61. As a direct result of Defendant's defamatory conduct, Plaintiff suffered substantial reputational harm, emotional distress, and financial loss, including difficulty obtaining new employment due to the lingering effects of the false criminal accusations.

**COUNT IV**

**MALICIOUS PROSECUTION**

62. Plaintiff realleges and incorporates paragraphs 1–31 as if fully set forth herein.

63. Defendant initiated or caused the initiation of criminal proceedings against Plaintiff without probable cause and with malice.

64. The criminal charges were terminated in Plaintiff's favor on August 13, 2025.

65. Defendant initiated and pursued criminal charges against Plaintiff despite lack of probable cause and despite possessing exculpatory evidence, including but not limited to video footage clearly demonstrating that Plaintiff did not commit the alleged crime.

66. Rather than disclose this evidence to law enforcement or the court, Defendant knowingly withheld material information that would have exonerated Plaintiff, acting with malice and in reckless disregard for his rights.

67. As a direct result of Defendant's conduct, Plaintiff was subjected to unwarranted criminal proceedings, reputational harm, and significant emotional and financial damages.

**COUNT V**

**HOSTILE WORK ENVIRONMENT**

68. Plaintiff realleges and incorporates paragraphs 1–3 and 38-47 as if fully set forth herein.

69. Plaintiff is a member of a protected class and was employed by Defendant Alpha Broder from on or about September 10, 2020, to October 27, 2023.

70. During his employment, Plaintiff was subjected to severe and pervasive harassment based on his race, including but not limited to repeated threats of violence, death threats, and intimidating conduct by Plaintiff's coworker, as well as racist comments made by a lead supervisor, in the presence of other employees.

71. Plaintiff reported these incidents of harassment and discriminatory conduct to management and human resources, including supervisor sand HR representatives, but Defendant failed to take prompt or effective remedial action.

72. Instead of addressing Plaintiff's complaints, Defendant subjected Plaintiff to disparate and discriminatory discipline, including counseling and discipline for minor infractions such as listening to music with profanity, smoking, and tardiness, while similarly situated employees who were not members of Plaintiff's protected class were not disciplined for the same conduct.

73. Plaintiff was denied workplace benefits, including floating holidays and vacation time, unless pre-reported and approved under stricter requirements than those imposed on other employees.

74. Defendant further created and maintained a hostile and abusive work environment by ignoring Plaintiff's complaints regarding workplace safety, threats, and a domestic violence incident involving management and other employees, and by retaliating against Plaintiff for raising these concerns.

75. The conduct described above was sufficiently severe and pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment, which interfered with Plaintiff's ability to perform his job and ultimately forced him to end his employment.

76. Defendant's actions were intentional, malicious, and in reckless disregard of Plaintiff's federally protected rights under 42 U.S.C. § 1981.

77. As a direct and proximate result of Defendant's conduct, Plaintiff suffered and continues to suffer lost wages and benefits, emotional distress, mental anguish, reputational harm, and other damages.

**COUNT VI**

**NEGLIGENT SUPERVISION AND RETENTION**

78. Plaintiff realleges and incorporates paragraphs 1–31 as if fully set forth herein.

79. Plaintiff realleges and incorporates paragraphs 1–31 as if fully set forth herein.

80. Defendant, including Alpha Broder, owed Plaintiff a duty to exercise reasonable care in the supervision and retention of their employees, including his Manager and Plaintiff's coworker.

81. Throughout his employment, Plaintiff repeatedly notified Defendant of Plaintiff's coworker's violent, threatening, and harassing conduct, including specific incidents where Plaintiff's coworker made death threats, sang songs about death directed at Plaintiff and others, and instigated altercations in the workplace. Plaintiff made multiple verbal and written complaints to supervisors and management, including requests to be separated from Plaintiff's coworker for his own safety.

82. Despite these repeated complaints and explicit requests for separation, Defendant failed to take any meaningful action to investigate, supervise, discipline, or remove Plaintiff's coworker from Plaintiff's work environment. Other employees who were involved in altercations were separated and disciplined, but Defendant ignored Plaintiff's concerns and allowed Plaintiff's coworker's conduct to continue unchecked.

83. Defendant's inaction extended to other employees, including his manager, whose conduct also posed a foreseeable risk of harm. Defendant knew or should have known of the propensity of these employees to engage in violent, threatening, harassing, or discriminatory conduct, as evidenced by prior complaints and incidents reported by Plaintiff and others.

84. By failing to respond to Plaintiff's repeated complaints and requests for intervention, Defendant breached their duty to exercise reasonable care in the supervision and retention of their employees, thereby allowing the unlawful conduct to continue and escalate.

85. As a direct and proximate result of Defendant's negligent supervision and retention, Plaintiff suffered damages including lost wages, emotional distress, reputational harm, and other economic and non-economic losses.

## COUNT VII

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

86. Plaintiff realleges and incorporates paragraphs 1–31; 48-65; and 76-83 as if fully set forth herein.

87. Defendant engaged in a pattern of extreme and outrageous conduct toward Plaintiff, including but not limited to repeated threats of violence and death by Plaintiff's coworker, persistent racial harassment and discriminatory discipline, and the deliberate disregard of Plaintiff's numerous complaints and requests for protection and separation from dangerous individuals in the workplace.

88. Defendant further escalated their misconduct by fabricating and communicating false criminal accusations against Plaintiff, which led to law enforcement forcibly entering Plaintiff's home, subjecting him and his family to a traumatic and humiliating police encounter, and initiating criminal proceedings that were ultimately dismissed in Plaintiff's favor.

89. Defendant's conduct was intentional, malicious, and carried out with reckless disregard for Plaintiff's well-being, knowing that such actions would likely cause Plaintiff severe emotional distress. Defendant ignored clear evidence of Plaintiff's vulnerability and the foreseeable consequences of their actions, including the emotional and psychological harm resulting from workplace threats, public humiliation, and the stress of facing unfounded criminal charges.

90. As a direct and proximate result of s' conduct, Plaintiff suffered severe emotional distress, mental anguish, humiliation, anxiety, and other damages, including but not limited to sleep disturbance, loss of enjoyment of life, and the need for medical and psychological treatment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

(a) that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(b) enter judgment against Defendant and for Plaintiff awarding damages to Plaintiff from Defendant's violations of law enumerated herein;

(c) enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(d) enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees, interest, and costs; and

(e) Compensatory Damages for pain, suffering, mental anguish, loss of enjoyment of life as well as liquidated damages; and

(f) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to Plaintiff's professional and personal reputation and loss of career fulfillment; and

(g) Compensation for lost wages, benefits, and other remuneration; and

(h) Interest on any and all prejudgment costs; and

(i) An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest; and

(j) Grant such other further relief as being just and proper under the circumstances.[1]

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues set forth herein which are so triable as of right by jury.

Dated: October 27, 2025.

Respectfully submitted,

**SQUIRES LEGAL GROUP, PLLC**
100 South Ashley Drive
Suite 600
Tampa, Florida 33602
Telephone: 813.922.2803

By: */s/ Christiane L. Nolton*
Christiane L. Nolton, Esq.
Fla. Bar No. 1029126
Email: christiane@squires-legal.com
Brien V. Squires, Esq.
Fla. Bar No. 0291873
Email: brien@squires-legal.com
***Attorneys for Plaintiff***

[1] Plaintiff reserves the right to later amend his complaint to include a claim for punitive damages.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served on the date indicated in the Return of Service.

Dated: October 27, 2025.

*/s/ Christiane L. Nolton*
Christiane L. Nolton, Esq.
Fla. Bar No. 1029126
Email:christiane@squires-legal.com